## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANNE MCKINLEY and JAMES MCKINLEY, | Civil No. 11-7607 (NLH/KMW) |
| Plaintiffs, | **OPINION** |
| v. | |
| SKYLINE CORPORATION and HOOSIER WOOD CREATIONS, INC., | |
| Defendants, Crossclaimants, and Cross Claim Defendants. | |
| HOOSIER WOOD CREATIONS, INC., | |
| Third-Party Plaintiff, | |
| v. | |
| HOMETTE CORPORATION, et al., | |
| Third-Party Defendants. | |

**HILLMAN, District Judge**

      This matter comes before the Court by way of two motions
[Doc. Nos. 11, 32] for summary judgment, the first by Defendant
Skyline Corporation, and the second by Third-Party Defendant
Homette Corporation, seeking summary judgment pursuant to Federal
Rule of Civil Procedure 56.  The Court has considered the
parties' submissions and decides this matter pursuant to Federal
Rule of Civil Procedure 78.

      For the reasons expressed below, the motions for summary

judgment will be granted.

## I.   <u>JURISDICTION</u>

The Court exercises jurisdiction over this matter pursuant to 28 U.S.C. § 1332 based on diversity of citizenship and an amount in controversy in excess of $75,000.  Plaintiffs Anne and James McKinley are citizens of the Commonwealth of Pennsylvania. Defendant Skyline Corporation ("Skyline")[1] is incorporated and maintains its principal place of business in the State of Indiana.  Similarly Defendant Hoosier Wood Creations, Inc. ("Hoosier")[2] is incorporated and maintains its principal place of business in the State of Indiana.  Therefore, complete diversity of citizenship exists between the parties.[3]  The amount in controversy is met because the allegations contained in

---

1.  Skyline is also a Crossclaimant and a Crossclaim Defendant in this action with respect to Hoosier Wood Creations, Inc., a Codefendant named by Plaintiffs in the amended complaint.

2.  Hoosier is also a Crossclaimant and a Crossclaim Defendant in this action with respect to Skyline, a Codefendant named in Plaintiffs' amended complaint.  Additionally, Hoosier is a Third-Party Plaintiff with respect to its third-party complaint against Third-Party Defendant Homette Corporation.

3.  In assessing whether complete diversity of citizenship exists between the parties, the Court need not consider the citizenship of Third-Party Defendant Homette Corporation because under Federal Rule of Civil Procedure 14, "it is not required that diversity of citizenship exist between the third-party defendant and the plaintiff, or ... between defendant, as third-party plaintiff, and the third-party defendant." <u>New Hampshire Ins. Co. v. Diller</u>, 678 F. Supp. 2d 288, 292 (D.N.J. 2009) (citing <u>Spring City Corp. v. Am. Bldgs. Co.</u>, 193 F.3d 165, 169 (3d Cir. 1999)).

Plaintiffs' complaint sufficiently demonstrate that the damages sought are in excess of $75,000, exclusive of interest and costs.

## II.   <u>BACKGROUND</u>

Plaintiffs bring this action under the New Jersey Products Liability Act (the "PLA" of the "Act") for personal injuries Anne McKinley allegedly suffered when a kitchen chair she was standing on broke while she was inside a prefabricated home she and her husband had recently purchased.  Plaintiffs filed the original complaint in this action on December 30, 2011 naming only Skyline as a Defendant.  Initially, Plaintiffs alleged that Skyline, the manufacturer of the home, had also "designed, manufactured, fabricated, specified, sold, supplied and/or placed into the stream of commerce" the kitchen chair.  (Pl.'s Compl. [Doc. No. 1] ¶¶ 2-3.)  Specifically, Plaintiffs asserted that the kitchen chair at issue "was included as part of the furnishings supplied by ... Skyline with [the] prebuilt summer cottage" Plaintiffs purchased approximately two months before Anne McKinley was injured.  (<u>Id.</u> ¶¶ 3-4, 8.)  Based on these allegations, Anne McKinley asserts a personal injury claim under the PLA, and James McKinley asserts a derivative claim for loss of consortium.  (<u>Id.</u> ¶¶ 17-20.)

Defendant Skyline answered Plaintiffs' complaint on February 13, 2012 denying that it manufactured, fabricated, specified, supplied, or sold either the prefabricated home or the kitchen

chair, and subsequently filed a motion for summary judgment.  On February 22, 2012, Skyline also filed a third-party complaint [Doc. No. 12] against Hoosier alleging that Hoosier manufactured the kitchen chair at issue, and then sold and supplied the kitchen chair to Homette Corporation, a wholly owned subsidiary of Skyline.  (Skyline's Third-Party Compl. [Doc. No. 12] ¶¶ 9-10.)

Pursuant to Federal Rule of Civil Procedure 15(a)(1)(B),[4] Plaintiffs filed an amended complaint [Doc. No. 16] on March 2, 2012 naming both Skyline and Hoosier as Codefendants in this action.  Plaintiffs' amended complaint superseded the original version of the complaint "in providing the blueprint for the future course of [this] lawsuit." Snyder v. Pascack Valley Hosp., 303 F.3d 271, 276 (3d Cir. 2002).  Thus, upon the filing of the amended complaint naming Skyline and Hoosier as Codefendants, the third-party claims originally alleged by Skyline against Hoosier were more properly considered as crossclaims between these now Codefendants.  See Fed. R. Civ. P. 13(g) ("A pleading may state as a crossclaim any claim by one party *against a coparty* if the claim arises out of the

_____

4.  Federal Rule of Civil Procedure 15(a)(1)(B) provides in pertinent part that "[a] party may amend its pleading once as a matter of course within ... 21 days after service of a responsive pleading[.]" As Defendant Skyline filed and served its answer on February 13, 2012, Plaintiffs had twenty-one days from that date to file an amended complaint without leave of court.  Plaintiffs filed a timely amended complaint on March 2, 2012.

transaction or occurrence that is the subject matter of the original action[.]") (emphasis added).

After the amended complaint was filed, Skyline filed an answer [Doc. No. 18] to the amended complaint on March 5, 2012, which appropriately re-alleged Skyline's third-party claims against Hoosier as crossclaims (hereinafter this document will be referred to as "Skyline's amended answer with crossclaims"). This procedure was proper because Skyline's amended answer with crossclaims [Doc. No. 18] superseded both Skyline's original answer [Doc. No. 9] and the third-party complaint [Doc. No. 12] filed against Hoosier.  Therefore, as of the filing of Plaintiffs' amended complaint and Skyline's amended answer with crossclaims, Skyline was no longer a "Third-Party Plaintiff" in this action, but rather a Defendant with respect to Plaintiffs Anne and James McKinley and a Crossclaimant with respect to Hoosier.  Similarly, Hoosier was no longer a "Third-Party Defendant" at that point, but rather a Defendant with respect to Plaintiffs Anne and James McKinley, and a Crossclaim Defendant with respect to Skyline.[5]

In response to Plaintiffs' amended complaint, Defendant Hoosier filed an answer [Doc. No. 22] with separate defenses, and

_____

5.  The Court notes that despite the change in the parties designations, the allegations made by Skyline against Hoosier in the superseded third-party complaint [Doc. No. 12] are virtually identical to the crossclaims alleged in Skyline's amended answer with crossclaims [Doc. No. 18].

crossclaims for contribution and indemnification against Skyline
on March 14, 2012.  Based upon that filing [Doc. No. 22], Hoosier
also became a Crossclaimant with respect to Skyline, and Skyline
became a Crossclaim Defendant with respect to Hoosier.  Also on
March 14, 2012, Hoosier filed another submission with the Court
entitled "Answer to Third Party Complaint, Separate Defenses,
Counterclaim for Contribution and Indemnification, Third Party
Complaint for Contribution and Indemnification, and Jury Demand"
[Doc. No. 23] which purports, in part, to respond to the
allegations made in Skyline's original third-party complaint.
However, as the Court noted supra, Skyline's third-party
complaint is no longer an operative pleading in this action.
Accordingly, to the extent Hoosier's submission [Doc. No. 23]
responds to the allegations of the third-party complaint by
Skyline, it is more properly viewed as Hoosier's answer to
Skyline's crossclaims as alleged in the amended answer with
crossclaims [Doc. No. 18].

Additionally, Hoosier's filing [Doc. No. 23] also purports
to assert counterclaims for contribution and indemnification
against Skyline, which Hoosier identifies as the "Third-Party
Plaintiff" while identifying Hoosier as the "Third-Party
Defendant".  However, as set forth supra, these labels are not
correct because Hoosier's claim against Skyline is not a
counterclaim between opposing parties, such as a third-party

plaintiff and a third-party defendant, but rather Hoosier has
asserted crossclaims against a Codefendant named in Plaintiffs'
amended complaint.  Therefore, Hoosier's "Counterclaim for
Contribution and Indemnification" as alleged in [Doc. No. 23]
must be viewed under Rule 13(g) as a crossclaim.  Finally,
Hoosier's filing [Doc. No. 23] also purportedly serves as a
third-party complaint for contribution and indemnification
against Homette Corporation and various fictitious parties.  With
respect to this portion of the filing by Hoosier, Hoosier is
considered a Third-Party Plaintiff and Homette is considered a
Third-Party Defendant.


III. **<u>DISCUSSION</u>**

     Presently before the Court are Skyline's motion for summary
judgment[6] [Doc. No. 11] seeking judgment in Skyline's favor with
respect to Plaintiffs' claims against Skyline as alleged in the
amended complaint.  Also before the Court is Third-Party
Defendant Homette's motion for summary judgment seeking judgment

_____

6.  Technically, Skyline's motion for summary judgment was mooted
by the subsequent filing of Plaintiffs' amended complaint, and
Skyline should have filed a renewed motion for summary judgment
after the amended complaint was filed.  However, the parties here
are clearly proceeding under the assumption that Skyline's motion
seeks judgment on the claims Plaintiffs asserted in the amended
complaint, and no party has raised an objection to the Court
considering this motion with respect to the amended complaint
rather than the original complaint.  In light of these particular
circumstances, the Court construes Skyline's motion with respect
to the claims allege in the amended complaint.

in its favor against Third-Party Plaintiff Hoosier with respect to Hoosier's third-party complaint, and against Plaintiffs Anne and James McKinley with respect to the amended complaint.[7]

Summary judgment is appropriate where the Court is satisfied that "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and

_____

7. Although Homette purportedly seeks summary judgment in its favor against Plaintiffs Anne and James McKinley with regard to the claims asserted in Plaintiffs' amended complaint, the Court notes that Plaintiffs do not assert any claims against Homette in the amended complaint. The only claims in this case asserted against Homette were asserted by Third-Party Plaintiff Hoosier. Accordingly, Homette can only seek the entry of summary judgment with respect to those claims.

all justifiable inferences are to be drawn in his favor.'"
Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)
(citing Anderson, 477 U.S. at 255).

Initially, the moving party bears the burden of
demonstrating the absence of a genuine issue of material fact.
Celotex, 477 U.S. at 323 ("[A] party seeking summary judgment
always bears the initial responsibility of informing the district
court of the basis for its motion, and identifying those portions
of 'the pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any,' which
it believes demonstrate the absence of a genuine issue of
material fact." (citation omitted); see also Singletary v. Pa.
Dept. of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001) ("Although
the initial burden is on the summary judgment movant to show the
absence of a genuine issue of material fact, 'the burden on the
moving party may be discharged by "showing" -- that is, pointing
out to the district court -- that there is an absence of evidence
to support the nonmoving party's case' when the nonmoving party
bears the ultimate burden of proof.") (citing Celotex, 477 U.S.
at 325).

Once the moving party has met this burden, the nonmoving
party must identify, by affidavits or otherwise, specific facts
showing that there is a genuine issue for trial. Celotex, 477
U.S. at 324.  Thus, to withstand a properly supported motion for

9

summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  <u>Anderson</u>, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  <u>Saldana v. Kmart Corp.</u>, 260 F.3d 228, 232 (3d Cir. 2001).

IV.  <u>**ANALYSIS**</u>

    A.  **New Jersey Products Liability Act**

    Under the New Jersey PLA, a manufacturer or seller of a product can be held liable if the plaintiff proves that the "product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it: a. deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae, or b. failed to contain adequate warnings or instructions, or c. was designed in a defective manner."  N.J. STAT. ANN. § 2A:58C-2.

    As defined by the PLA, a manufacturer is "any person who designs, formulates, produces, creates, makes, packages, labels or constructs any product or component of a product[.]"  <u>Id.</u> § 2A:58C-8.  Additionally, the seller of a product may qualify as a manufacturer to the extent the "product seller designs, formulates, produces, creates, makes, packages, labels or

constructs the product before its sale[.]"  Id.  A product seller is defined as "any person who ... sells; distributes; leases; installs; prepares or assembles a manufacturer's product according to the manufacturer's plan, intention, design, specifications or formulations; blends; packages; labels; markets; repairs; maintains or otherwise is involved in placing a product in the line of commerce."  Id.

**B.  Skyline's Motion for Summary Judgment**

Skyline seeks the entry of summary judgment in its favor with respect to the claims asserted in Count I of Plaintiffs' amended complaint alleging a cause of action under the PLA. Skyline asserts that it is entitled to summary judgment for two reasons: (1) Plaintiffs sued the wrong party because it is undisputed that Skyline did not design, manufacture, fabricate, package, label, supply or sell the kitchen chair that allegedly caused Plaintiff Anne McKinley's injuries; and (2) even if Skyline were the seller of the kitchen chair at issue, Skyline is entitled to statutory immunity because it filed the required affidavit under the Section 2A:58C-9 of the PLA certifying that Skyline played no role in the design, manufacture, packaging or labeling of the allegedly defective kitchen chair and correctly identifying the manufacturer of the kitchen chair — Hoosier.[8]

---

8.  In light of the Court's finding set forth infra that summary judgment must be entered in Skyline's favor because Skyline did not design, manufacture, fabricate, package, label, supply, or

11

(Skyline's Mem. of Law in Supp. of Mot. for Summ. J. [Doc. No. 11] (hereinafter, "Skyline's Mem."), 1.)

In support of the motion, Skyline submitted the affidavit of Ronald E. Foster, the Director of Consumer and Legal Relations at Skyline and at Homette (the "Foster Affidavit"). As set forth in the Foster Affidavit, Skyline manufactures and sells a variety of housing units such as mobile homes as well as towable recreational vehicles and park model homes. (Foster Aff. ¶ A1.) However, Skyline did not manufacture or sell the specific "Shore Park" park model home purchased by Plaintiffs in this case. (Id. ¶¶ A2, B2-6.) The park model home Plaintiffs purchased was manufactured and sold by Homette, a wholly owned subsidiary of Skyline. (Id.) At the time of purchase, Plaintiffs, like all purchasers of "Shore Park" park model homes, had the option of buying certain furnishings and amenities to be included with their home and opted to purchase the following: an ice-maker, a microwave oven, an air conditioner, track lighting, a sofa/bed, a recliner, an end table, a cocktail table, a dinette table, four dinette chairs, a bed frame, a box spring, a mattress, pillows, and pillow shams. (Id. ¶¶ A4-B1.) The dinette chairs purchased as an optional amenity included the kitchen chair which allegedly

---

sell the kitchen chair which allegedly caused Plaintiff's injuries, the Court need not address Skyline's alternative argument regarding statutory immunity based on the filing of an affidavit pursuant to N.J. Stat. Ann. 2A:58C-9.

resulted in Anne McKinley's injuries.  (<u>Id.</u> ¶ B1.)

     According to the Foster Affidavit, Skyline and Homette
purchase all of the optional furnishings and amenities for their
manufactured homes and recreational vehicles "off-the-shelf" and
in bulk from a manufacturer or supplier, and neither Skyline nor
Homette design, manufacture, fabricate, or label these
furnishings and amenities.  (<u>Id.</u> ¶¶ C1-2.)  The Foster Affidavit
specifically avers that the manufacturer of the kitchen chair at
issue in this case is Hoosier, a company that "has been
manufacturing quality wood furniture for the RV and Park Model
industry since 1995."  (<u>Id.</u> ¶¶ D1-2.)  The Foster Affidavit makes
clear that neither Skyline nor Homette design, manufacture,
fabricate or label kitchen or dinette chairs generally, and
further demonstrates that Skyline did not design, formulate,
produce, create, make, manufacture, fabricate, blend, package,
label, construct, market, repair, maintain, sell, distribute,
lease, install, or prepare or assemble the particular kitchen
chair at issue in accordance with the manufacturer's plan,
intention, design, or specifications.  (<u>Id.</u> ¶¶ C3-5.)  Moreover,
the Foster Affidavit establishes that Skyline was not involved in
placing the kitchen chair at issue into the line of commerce.
(<u>Id.</u> ¶ C5.)  According to the Foster Affidavit, neither Skyline
nor Homette exercise any control over the design, manufacture,
fabrication or labeling of chairs, have never exercised such

control, and did not exercise such control with respect to the
kitchen chair at issue.  (Id. ¶¶ C6-8.)  Nor have Skyline or
Homette ever held themselves out as chair designers,
manufacturers, fabricators or labelers.  (Id. ¶¶ C9-10.)

     With respect Hoosier, the Foster Affidavit sets forth that
neither Skyline nor Homette ever designed, manufactured,
fabricated or labeled chairs that Hoosier manufactured, supplied
or sold, and that neither of these companies ever exercised
control of the same.  (Id. ¶¶ E1-2.)  Moreover, neither Skyline
nor Homette have ever provided drawings or specifications for
chairs manufactured, supplied, and sold by Hoosier, specifically
with regard to the kitchen chair at issue.  (Id. ¶¶ E3-5.)  As
established by the Foster Affidavit, Skyline and Homette have
never modified, altered, serviced, or repaired chairs
manufactured, supplied or sold by Hoosier, including the kitchen
chair at issue here.  (Id. ¶¶ E6-8.)

     Based on the averments of the Foster Affidavit, Skyline
argues that it "does not fit within any of the statutory
definitions of [either a] 'product seller' or [a] 'manufacturer'"
as set forth in the PLA.  (Skyline's Mem. 11.)  Moreover, Skyline
contends that because these averments are undisputed, no genuine
issue of material fact exists for trial and Skyline is entitled
to summary judgment on Plaintiffs' PLA claim because it cannot be
held liable under the Act as a matter of law.  (Id.)

In recent months, the parties to this action have engaged in a tiered approach to discovery, and on July 26, 2012, Skyline filed a supplemental memorandum in support of its motion for summary judgment [Doc. No. 33].  In its most recent submission, Skyline represents that the exchange of Rule 26(a)(1) self-executing disclosures during the first and second tiers of discovery resulted in the absence of any allegations by any party that Skyline was the product seller.  (Skyline's Supplemental Mem. [Doc. No. 33] 3.)  Skyline also represents that there is "no other evidence of record that Skyline was the product seller" thus it is "undisputed that Skyline was not the seller of the alleged defective product that purportedly caused plaintiffs' alleged injuries."  (Id.)  Skyline thus asks the Court to grant its "unopposed" motion for summary judgment.  (Id. at 4.)

In this case, Plaintiffs seek to hold Skyline liable pursuant to the PLA, and as set forth supra, must demonstrate that Skyline qualifies under the Act as a manufacturer or as a product seller in order to do so.  N.J. STAT. ANN. § 2A:58C-2 (explaining that only "[a] manufacturer or seller of a product shall be liable in a product liability action[.]")  In moving for summary judgment, Skyline has demonstrated through the affidavit of Ronald E. Foster, Director of Consumer and Legal Relations for Skyline, that Skyline is neither the manufacturer nor the product seller of the kitchen chair at issue within the meaning of the

15

PLA and thus cannot be held liable as a matter of law.  Skyline having met its burden of demonstrating the absence of a genuine issue of material fact as to Skyline's liability on Plaintiffs' PLA claim, Plaintiffs were required to identify, by affidavits or otherwise, specific facts showing that there was a genuine issue of material fact for trial.  See Celotex, 477 U.S. at 324.

By letter dated August 17, 2012 from Plaintiffs' counsel, Daniel J. O'Brien, Esq., Plaintiffs advised the Court that Plaintiffs had "no opposition to ... Skyline['s] ... Supplemental Memorandum in Support of its Motion for Summary Judgment[.]" (Letter from Daniel J. O'Brien [Doc. No. 35] 1.)  Plaintiffs further advised the Court that they were prepared to stand "on their original position" as set forth in their March 2, 2012 response to Skyline's motion.  Plaintiffs' original response to Skyline's motion for summary judgment was filed on March 2, 2012, just prior to the filing of their amended complaint and prior to any discovery.

Plaintiffs' original response initially asserted that it sued Skyline in good faith because the names of neither Homette nor Hoosier appeared in Skyline's product brochure or in the Agreement of Sale for the park model home.  (Pls.' An. to Def.'s Mot. for Summ. J. [Doc. No. 15] 1.)  Plaintiffs also conceded that "Skyline would be entitled to [the] entry of Summary Judgment if the facts as spelled out in their Motion and the

accompanying Affidavit are accurate ..., and if ... Hoosier ... proves to be a viable defendant, has attachable assets and has not been adjudicated bankrupt." (Id.)  However, Plaintiffs argued that summary judgment could not be entered at the time the motion was originally filed because these facts were not yet "established as a matter of record." (Id. at 2.)  Plaintiffs originally represented that if, after some discovery, "the facts ... alleged in Skyline's Motion for Summary Judgment and the accompanying Affidavit are borne out, plaintiffs [would] stipulate to Skyline's dismissal from this case." (Id.)

At this time, Plaintiffs have not stipulated to the dismissal of Skyline from this case.  However, the parties have engaged in some discovery to this point, and it appears that discovery was sufficient enough for Plaintiffs to assert that they have no opposition to Skyline's supplemental memorandum detailing the summary judgment motion as unopposed.  Moreover, in the face of Skyline's properly supported motion for summary judgment and its supplemental memorandum, Plaintiffs have failed to identify specific facts and affirmative evidence that contradict those offered by Skyline.  See Anderson, 477 U.S. at 256-57.  Accordingly, the Court finds that Skyline does not qualify as either a manufacturer or product seller under the PLA and is therefore entitled to summary judgment with respect to Count I of Plaintiffs' amended complaint asserting claims under

17

the PLA.

### C.    Homette's Motion for Summary Judgment

As a threshold manner, the Court notes that to the extent Homette's motion seeks summary judgment in its favor with respect to the claims set forth in Plaintiffs' amended complaint, the motion must be denied because Plaintiffs do not assert any claims against Homette.  Homette is a party in this action only by virtue of Hoosier's third-party complaint against it.  Thus, summary judgment can only be granted in favor of Homette with respect to the third-party claims asserted by Hoosier.  Here, Hoosier asserts a third-party claim against Homette for contribution and indemnification.  (See Hoosier's Third-Party Compl. Against Homette [Doc. No. 23] ¶¶ 9-13.)

Hoosier contends that Homette "was the seller and/or supplier of" the kitchen chair at issue, and that if in fact the kitchen chair was defective, "it was as a result of the negligence of Homette ... in the transporting, shipping, installation and/or maintenance of the" kitchen chair.  (Id. ¶¶ 9, 12.)  Hoosier also alleges that if in fact Homette is the seller of the kitchen chair, Homette is still liable under the PLA on the basis that either Homette "exercised significant control over the design, manufacture, packaging or labeling of the [kitchen chair] relative to the alleged defect ... which caused the injury and damage;" or that Homette "knew or should

18

have known of the defect in the [kitchen chair] which caused the injury and damage, and/or it was in possession of facts from which a reasonable person would conclude that [Homette] had or should have had knowledge of the alleged defect;" or that Homette "created the defect in the product which cause the injury and damage." (Id. ¶ 13.)  Homette subsequently filed an answer [Doc. No. 31] to Hoosier's third-party complaint denying that it was liable to Hoosier for indemnification or contribution and alleging counterclaims against Hoosier also for indemnification and contribution.

In seeking summary judgment on Hoosier's third-party complaint, Homette submits the affidavit of Ronald E. Foster, the Director of Consumer and Legal Relations for Homette (hereinafter, "Foster Affidavit II").  By way of the Foster Affidavit II, Homette concedes that it manufactured the "Shore Park" park model home purchased by Plaintiffs.  (See Foster Aff. II [Doc. No. 52] ¶ B3.)  Homette further concedes that the "Shore Park" park model home Plaintiffs ultimately purchased, which included the kitchen chair at issue, was originally sold by Homette to a dealer from whom Plaintiffs made their subsequent purchase.  (Id. ¶ B2.)

However, Homette argues that it is entitled to statutory immunity under Section 2A:58C-9 of the PLA which provides that "[i]n any product liability action against a product seller," the

19

product seller "shall be relieved of all strict liability claims [made against it], subject to the provisions set forth in subsection d. of this section," upon the filing by the product seller of "an affidavit certifying the correct identity of the manufacturer of the product which allegedly caused the injury, death or damage."  N.J. STAT. ANN. § 2A:58C-9(a)-(b); see also D.J.L. v. Armour Pharm. Co., 704 A.2d 104, 117 n.25 (N.J. Super. Ct. Law Div. 1997) ("While those in the wholesale and retail chain of distribution may potentially be liable for the foreseeable injuries proximately caused by defective products intended for ultimate sale to the public, they may be relieved from liability where they comply with the exculpatory provisions of the Products Liability Act[.]")

While the underlying purpose of Section 2A:58C-9 is "to reduce litigation costs borne by innocent retailers in product liability actions[,] ... the statute relieves a seller of liability only if it had no significant responsibility for the alleged product defect and the manufacturer is amenable to service of process and is likely to be able to satisfy any judgment." Claypotch v. Heller, Inc., 823 A.2d 844, 851 (N.J. Super. Ct. App. Div. 2003) (citations and internal quotations omitted).

Accordingly, even when a product seller submits the affidavit required under subsection (a) certifying the correct

identity of the manufacturer, a product seller may still be liable under subsections (c) or (d) if the seller "exercised some significant control over the design, manufacture, packaging or labeling of the product relative to the alleged defect in the product which caused the injury, death or damage[; or] ... if [t]he manufacturer has no known agents, facility, or other presence within the United States[;] or [t]he manufacturer has no attachable assets or has been adjudicated bankrupt and a judgment is not otherwise recoverable from the assets of the bankruptcy estate." <u>Claypoth</u>, 823 A.2d at 852 (citing § 2A:58C-9(c)(2), (3), (d)(1)) (internal citations and quotations omitted). Moreover, a product seller also may be subject to liability under subsection (d) "if it 'knew or should have known of the defect in the product which caused the injury, death or damage or the plaintiff can affirmatively demonstrate that the product seller was in possession of facts from which a reasonable person would conclude that the product seller had or should have had knowledge of the alleged defect in the product which caused the injury, death or damage; or ... created the defect in the product which caused the injury, death or damage.'" <u>Claypoth</u>, 823 A.2d at 852 (citing § 2A:58C-9(d)(2), (3)).

In accordance with Section 2A:58C-9(a), Homette filed the Foster Affidavit II which identifies Hoosier as the manufacturer of the kitchen chair at issue, sets forth the location of

Hoosier's manufacturing facility in New Paris, Indiana including its address and phone number, and avers that Hoosier is currently in business, solvent, and has not been adjudicated bankrupt. (Foster Aff. II ¶¶ D1-6.)  These averments by Homette remain undisputed in light of Hoosier's failure to file opposition to Homette's motion for summary judgment on the third-party complaint.  Moreover, Hoosier has admitted that it is the manufacturer of the kitchen chair at issue and that Hoosier has not been adjudicated bankrupt.  (See Requests for Admission, Exs. A, B to Homette's Mot. for Summ. J., [Doc. No. 32] at ¶ 5) (Hoosier admitting Request number five that "[t]he manufacturer of the Chair has not been adjudicated bankrupt.).  Accordingly, Homette has satisfied the requirements of subsections (a) and (b) through the filing of the Foster Affidavit II, and cannot be held liable under subsections (c)(2) or (c)(3) because Hoosier maintains a facility and has agents within the United States and is solvent and not adjudicated bankrupt.

In this case, Homette can only be held liable on Hoosier's third-party claims if, under either subsection (d)(1), (2), or (3), Homette exercised some significant control over the design, manufacturer, packaging or labeling of the kitchen chair; knew or should have known of the defect which cause the injuries or was in possession of facts leading a reasonable person to that conclusion; or created the defect that caused the injury.  With

22

respect to subsection (d)(1),[9] Hoosier has admitted that Homette did not exercise significant control over any of the following: the design of the kitchen chair, the manufacture of the kitchen chair, or the labeling of the kitchen chair.  (See Requests for Admission, Exs. A, B to Homette's Mot. for Summ. J., [Doc. No. 32] at ¶¶ 1-2, 4.)  Moreover, Homette avers in the Foster Affidavit II, and Hoosier does not dispute, that Homette did not design, formulate, produce, create, make, manufacture, fabricate, blend, package, label, construct, repair, maintain, lease, install, or prepare or assemble the kitchen chair at issue. (Foster Aff. II ¶ C5.)  Nor has Homette ever exercised control over the design, manufacture or labeling of Hoosier chairs.  (Id. ¶¶ E1-8.)  Thus, Homette cannot be held liable under subsection (d)(1).

As it relates to subsection (d)(2),[10] Homette avers in the Foster Affidavit II that other than the complaint made in this

_____

9.  Under subsection (d)(1), a product seller is liable if it "has exercised some significant control over the design, manufacture, packaging or labeling of the product relative to the alleged defect in the product which caused the injury, death or damage[.]"  N.J. Stat. Ann. § 2A:58C-9(d)(1).

10. Under subsection (d)(2), a product seller is liable if it "knew or should have known of the defect in the product which caused the injury, death or damage or the plaintiff can affirmatively demonstrate that the product seller was in possession of facts from which a reasonable person would conclude that the product seller had or should have had knowledge of the alleged defect in the product which caused the injury, death or damage[.]"  N.J. Stat. Ann. § 2A:58C-9(d)(2).

case, Homette has never "received a notice, communication or indication regarding an alleged defect in a chair that Hoosier designed, manufactured, packaged, labeled, supplied, or sold" nor has Homette ever received any notice, communication or indication that a chair "designed, manufactured, packaged, labeled, supplied or sold by Hoosier – allegedly caused personal injury or property damage." (Id. ¶¶ G1-2.)  Moreover, Homette has demonstrated by way of the Foster Affidavit II that the company has never "received a claim or complaint, from any person or entity, regarding a Hoosier-manufactured or Hoosier-sold chair, including the type of 'dinette' chair" involved in this case.  (Id. ¶ G3.) Hoosier did not oppose Homette's motion for summary judgment, and these averments are sufficient to establish that Homette cannot be held liable on the third-party claim asserted by Hoosier on this issue.  Finally, Homette has established that it did not create the defect in the product that caused injury or damaged under subsection (d)(3) because there is no evidence before the Court demonstrating that Homette somehow modified, altered, serviced or repaired any Hoosier chairs, including the kitchen chair at issue here, thus causing the defect which led to Plaintiff Anne McKinley's alleged injuries.

Here, Third-Party Plaintiff Hoosier seeks to hold Third-Party Defendant Homette liable for contribution and indemnification under the PLA.  In moving for summary judgment on

24

these third-party claims, Homette has demonstrated — through the
Foster Affidavit II and the Requests for Admissions exchanged
between the parties — the absence of a genuine issue of material
fact regarding Homette's entitlement to statutory immunity as set
forth in Section 2A:58C-9.  Homette has presented undisputed
evidence that, as a product seller under the PLA, Homette must be
relieved of all strict liability claims in this action because it
filed the required affidavit and is not otherwise liable on
Hoosier's third-party claims under subsection (d) as outlined
above.

Homette having met its burden of demonstrating the absence
of a genuine issue of material fact as to its own liability on
Hoosier's third-party claims, Hoosier, as the non-moving party,
was required to identify, by affidavits or otherwise, specific
facts showing that there was a genuine issue of material fact for
trial.  See Celotex, 477 U.S. at 324.  However, Hoosier has not
opposed Homette's motion and therefore has not presented the
Court with specific facts and affirmative evidence that
contradict those offered by Homette, which conclusively
demonstrates that Homette is "truly innocent of responsibility
for the alleged defective product" under the PLA.  See Claypotch,
823 A.2d at 852.  Accordingly, Homette is entitled to the entry
of summary judgment in its favor on Hoosier's claims for
contribution and indemnification as alleged in the third-party

complaint.

**V.    <u>CONCLUSION</u>**

For the foregoing reasons, Defendant Skyline's motion for summary judgment [Doc. No. 11] is granted and judgment shall be entered in favor of Defendant Skyline on all of Plaintiffs' claims.  Additionally, Third-Party Defendant Homette's motion for summary judgment [Doc. No. 32] is granted and judgment shall be entered in favor of Third-Party Defendant Homette on Third-Party Plaintiff Hoosier's claims.  An Order consistent with this Opinion will be entered.


Date: <u>September 26, 2012</u>              <u>/s/ Noel L. Hillman  </u>
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.

26